On Rehearing.
 

 ROGERS, Justice.
 

 This proceeding contains reciprocal demands by a wife and her husband for a sepa
 
 *803
 
 ration from bed and 'board. The judge of the district court concluded that the wife was the aggrieved party and gave her a judgment of separation and the custody of the children. Qn appeal, this court concluded that the husband was the aggrieved party and gave him the judgment and the custody of the children. Further consideration of the case has convinced us that neither demand is well founded, because both spouses are equally blamable for the unhappy condition of their matrimonial relations.
 

 The parties were married on June 19, 1923, and lived together until October 4, 1930. Four children — three girls and one boy— were born of the marriage. At the time the suit was filed, the eldest child was six years of age and the youngest child was two years of age. For about five years after their marriage the parties lived in New Orleans. In 1928, they moved to Waggaman, Jefferson parish, a sparsely settled community about fifteen, miles from New Orleans. The plaintiff was persuaded by her husband to make this move on the plea that living expenses would be less in the country than they were in the city. Plaintiff was also influenced to make the change because her husband possessed about $2,000, which she suspected he intended to lend to his brother, and, as she did not want the brother to have the money, she thought she could prevent that result by using the amount to build a home in the country. Defendant’s mother and father and other relatives live at Waggaman, and defendant used his money to build a home for his family on certain lots owned by his parents at Waggaman. Defendant worked in New Orleans, where he was employed at the time of his marriage and where he continued to be employed during the entire time the parties lived together in New Orleans and at Waggaman.
 

 The only neighbors of the parties at Waggaman were the parents and other relatives of the defendant, a Mrs. Dibert, and several negro families. And it is shown that one of the inducements held out to his wife by defendant in order to obtain her consent to move to the country was that she would be permitted to visit the city once or twice a week for shopping purposes, visiting her friends, and attending shows.
 

 The testimony discloses that defendant’s relatives among whom plaintiff was living were wholly hostile and unfriendly towards her. A sister of defendant instituted and operated a complete system of espionage over plaintiff’s movements, by checking on a calendar, which was offered in evidence by defendant, each time she left her home, whether she went to Néw Orleans for shopping or for other purposes, to Baton Rouge for the purpose of visiting her mother and her family,' or merely to'stores in the vicinity in order to make the necessary purchases for the household needs. Plaintiff knew of the existence of this system of espionage of which she. was the victim, which must have had the natural result of aggravating the situation of which defendant now complains.
 

 The parties apparently lived peaceably, if not happily, at Waggaman for more than a year. It was only a few months before their separation actually took place that their relations became strained, and the matrimonial obligations of mutual patience and forbear
 
 *805
 
 anee appear to have been disregarded by them. If plaintiff left her home oftener and stayed away longer, it was undoubtedly due to-the defendant’s habitual censure of her actions and the unfriendly attitude of his parents and relatives towards her. There was no justification for defendant locking plaintiff out of her own home. On the other hand, plaintiff was at fault in neglecting to some extent her domestic obligations, thereby provoking her husband’s anger, in cursing her husband, and in subjecting him to bodily violence. On October 3, 1930, the matrimonial troubles of the spouses culminated in a wordy and physical combat, in which the parties freely denounced and inflicted bodily injuries upon each other. The next day, plaintiff left with her children for Baton Rouge, where she has since resided with her mother.
 

 The settled jurisprudence is that where both spouses are at fault and their wrongs are mutual, neither is entitled to any relief. McKoin v. McKoin, 168 La. 32, 121 So. 182; Artigues v. Artigues, 172 La. 884, 135 So. 665, 76 A. L. R. 981.
 

 The remedy of the parties for their harsh treatment of each other must be sought in the removal of the matrimonial domicile to a more congenial atmosphere and in a reformation of their conduct and deportment. The wrongs complained of may cease with the removal of the causes that produced them. If they do not, the interference of the law may be jkstly invoked.
 

 For the reasons assigned, the original decree of this court is recalled, the judgment appealed from is annulled, and the demands of the parties are rejected, reserving to each the right to apply for a rehearing.
 

 ODOM, J., dissents.