GLADNEY, Judge.
The plaintiff, Leona Ford Watson, who was married to J. C. Watson December 24, 1941, instituted this action in Ouachita Parish, their matrimonial domicile, to secure support and custody of their minor child, John Cassius Watson, 14 years of age, and a separation on the grounds of abandonment. Through reconventional demand, the husband sought a judgment of separation on the grounds of public defamation alleging his wife charged him with being unfaithful. Following trial of the issues so presented judgment was rendered awarding the custody of the child to Mrs. Watson, together with support and alimony and attorney’s fees; further, it granted unto plaintiff a decree of separation on the grounds of abandonment and rej ected the reconventional demand of Watson for a separation on the grounds of public defamation. The defendant has appealed, asserting that the trial court’s decree is in error in granting to his wife a decree of separation on the grounds of abandonment and in refusing to grant his demand for a judgment of separation based on public defamation.
Consideration is given to the issues thus presented, in inverse order. Public def *530 amation on the part of one of the married persons towards the other is named as a ground for separation from bed and board in LSA-C.C. Art. 138(4). This ground for separation appeared in the 1825 Civil Code, Art. 139(1) and the language thereof as incorporated in Revised Civil Code of 1870, Art. 138(4) has not been changed. Pothier, Contrat de Marriage, Vol. 2, Nos. 517 and 518 pointed out the law requires in the dissolution of the bonds of matrimony between the parties that facts must be shown as will authorize a court of justice to declare that the interference of the law is absolutely necessary. Harman v. McLeland, 16 La. 26 (1840). Referring to this authority, the Supreme Court in Arbour v. Murray, 222 La. 684, 63 So.2d 425 (1953) required proof of adultery must be clear and conclusive to warrant the granting of divorce.
The petition of the husband’s re-conventional demand does not allege that the wife accused him of specific acts of adultery, but only that inferentially he was guilty of infidelity. Manifestly in our jurisprudence the ground for separation based on public defamation implies a form of mental cruelty. It is necessary to prove the false charge was not made in good faith and publicly to a person to whom the accuser has no legitimate excuse to talk about the subject of the accusation. Flake v. Flake, 163 La. 1022, 113 So. 361 (1927). However, the fact that a wife makes known her suspicions of her husband’s supposed misconduct to confidential friends does not entitle him to a divorce on the ground of public defamation where she does so while seeking sympathy or advice. Ashton v. Grucker, 48 La.Ann. 1194, 20 So. 738 (1896); Primeaux v. Comeaux, 139 La. 549, 71 So. 845 (1916); McKoin v. McKoin, 168 La. 32, 121 So. 182 (1929); Wigzell v. Wigzell, 164 La. 1060, 115 So. 269 (1928). In Starns v. Starns, 176 La. 610, 146 So. 165 (1933), the court declared that where the declarations of defendant concerning plaintiff appeared to have been uttered without malice, or under the circumstances from which no malice is in law implied, such declarations are not actionable.
The witnesses called to testify as to the defamation charges included Juleen Aldridge, Graves J. Grant and Willie Jean Shields, all of whom were employees in the office with Watson and were his business associates. Juleen Aldridge testified that Mrs. Watson phoned her on one occasion to advise that she was gathering information against Mr. Watson and calling people whom she thought could help her as she had reason to believe that Mr. Watson was having an affair or seeing someone. Mrs. Shields testified that Mrs. Watson made some 5 or 6 phone calls to her in which she told Mrs. Shields that her husband was running around, drinking and gambling, or that she thought he was and that she was asking for help from the witness. Graves J. Grant was the immediate superior in the employment of Mr. Watson in the Division of Sanitation of the State Department of Health. He testified that Mrs. Watson on two occasions told him she thought her husband was running around and she would like for Grant to talk to Mr. Watson. The witness further stated that Mrs. Watson said she might say something that would hurt her husband. Watson testified that the only statements of an inflammatory nature made to him were made in the presence only of his son.
Upon reviewing the testimony of the witnesses the trial judge concluded there was nothing malicious indicated in the testimony nor did the statements attributed to Mrs. Watson constitute defamation. We are in full accord with the conclusion so reached by the trial court as we feel that the utterances of Mrs. Watson were made to parties in an effort to secure some remedy for what she reasonably considered to be ill treatment received at the hands of her husband by neglect of herself and family. The circumstances give no indication the purpose of Mrs. Watson was otherwise.
Appellant contends the judgment granting unto his wife a decree of separa *531 tion on the grounds of abandonment is not supported by adequate proof. This argument is without merit. Mrs. Watson testified that her husband left the family home with his clothes and belongings on April 4, 1967 with the avowed intention of not returning. She is corroborated as to the departure of her husband by three witnesses, Mrs. Blanche Carro, Mrs. Margaret Craig and Mrs. M. R. Devereux. Watson testified that he moved from his home on April 4, 1967 and that as of the date of trial, June 15, 1967, he had not returned. In response to the question: Do you want to live with your wife?, he answered, “Under the circumstances, no, sir.” It is our conclusion the evidence furnishes sufficient proof of abandonment of the matrimonial domicile by the husband.
We find no error in the judgment as rendered, and therefore it is affirmed at appellant’s cost.